UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| AXA ADVISORS, LLC, a Delaware limited liability company, | Case No. 1:15-cv-137-BLW |
| Plaintiff, | **MEMORANDUM DECISION** |
| vs. | |
| GRANT N. LEE, individually; GRANT N. LEE, as Assignee of Rick Lee; JOYCE M. LEE, individually; SCOTT LEE, individually; and JASON LEE, individually, | |
| Defendants. | |

## INTRODUCTION

The Court has before it cross-motions for summary judgment.  The Court heard oral argument on January 25, 2016, and took the motions under advisement.  For the reasons expressed below, the Court will deny the motion filed by the plaintiff and grant the motion filed by the defendants.

## FACTUAL BACKGROUND

The defendants – five members of the Lee family – have filed an arbitration claim with the Financial Industry Regulatory Authority (FINRA) against plaintiff AXA Advisors, a broker-dealer and member of FINRA.  FINRA is a non-governmental regulatory organization for securities brokers and dealers.  It established an arbitration forum to resolve disputes with customers, and its members have agreed to rules governing access to that forum.

**Memorandum Decision – page 1**

The Lees lost over a million dollars in investments they made through Douglas Roberts, who was a representative for AXA at the time.  In their arbitration claim, the Lees claim that AXA failed to properly supervise Roberts.

AXA brought this lawsuit seeking to enjoin the arbitration on the ground that the Lees were never customers of AXA and hence could not compel arbitration under FINRA Rule 12200.  Both sides agree – for the purposes of these cross motions only – that (1) AXA is a FINRA member governed by FINRA Rules, (2) Roberts was an "associated person" with AXA at all times relevant here for purposes of FINRA Rule 12200; (3) the Lees dealt exclusively with Roberts and never opened an account with AXA or purchased any services from AXA; and (4) the Lees were customers of Roberts.

The parties diverge, however, in the meaning they attach to these undisputed facts. AXA argues that because the Lees dealt exclusively with Roberts, the Lees were never customers of AXA and hence cannot compel arbitration under Rule 12200.  The Lees argue that because they were customers of Roberts who was an associated person with AXA, they are entitled to compel arbitration under Rule 12200.

The resolution of this conflict will require the Court to interpret FINRA Rule 12200.  Both sides have filed motions for summary judgment, and both sides agree that because no material facts are in dispute, the decision will turn on the Court's legal interpretation of FINRA Rule 12200.

# ANALYSIS

## Arbitrability – Who Decides?

Whether the court or the arbitrator decides arbitrability is an issue for judicial determination unless the parties "clearly and unmistakably provide otherwise." *Oracle Am., Inc. v. Myriad Group A. G.,* 724 F.3d 1069, 1072 (9th Cir.2013).  This translates into "a presumption that courts will decide which issues are arbitrable." *Id.*

Here, the FINRA rules do not clearly and unmistakably provide that FINRA arbitrators will determine arbitrability.  *Goldman Sachs & Co. v. City of Reno,* 747 F.3d 733 (9th Cir. 2014).  Hence, "[t]he presumption that the court will decide which issues are arbitrable remains unrebutted, and [this Court] must make the call."  *Id.* at 739.

## Is This Dispute Arbitrable?

Arbitration is a matter of contract, and there is "a liberal federal policy favoring arbitration agreements."  *Id.* at 739 (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)).  "In line with these principles, courts must place arbitration agreements on an equal footing with other contracts, and enforce them according to their terms."  *AT & T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011).

The terms relevant here are contained in FINRA Rule 12200.  That Rule provides in pertinent part as follows:

> Parties must arbitrate a dispute under the Code if:
> • Arbitration under the Code is either:
>   (1) Required by a written agreement; or
>   (2) Requested by the customer.

> • The dispute is between a customer and a member or associated person of a member; and
> • The dispute arises in connection with the business activities of the member or the associated person, except the insurance business activities of a member that is also an insurance company.

As discussed above, AXA agrees (for the purposes of resolving these motions only) that the Lees were customers of Roberts.  But AXA argues that in order to fall within the terms of FINRA Rule 12200, the Lees must be customers *of AXA*.  The issue boils down to whether it is enough for the Lees to be customers of Roberts, an associated person of AXA, or whether the Lees must be direct customers of AXA.

The FINRA Rules define "customer" only in the negative: "A customer shall not include a broker or dealer."  *See* FINRA Rule 12100(i).  This definition does not tell us what a "customer" is, and because the Lees are neither brokers nor dealers, the FINRA Rules' definition, standing alone, reveals nothing.

More helpful, argues AXA, is the Ninth Circuit decision in *Reno.*  That case, according to AXA, holds that parties like the Lees must have purchased some service, or opened an account with, the FINRA member in order to compel that member to arbitration under Rule 12200.  The Lees counter that *Reno* dealt with facts quite different than this case and hence contains no precedent to guide this Court.

In *Reno,* the City of Reno issued $211 million in municipal bonds and employed Goldman Sachs & Co. to market the bonds and conduct auctions where interest rates would be set.  When the auctions later failed, Reno blamed Goldman and sought arbitration.  Goldman resisted, claiming that Reno was not its customer.  The Circuit had

"little difficulty" in finding that Reno "easily qualifies as Goldman's customer." *Id.* at 735, 741.

The issue was easy because Reno and Goldman had a contractual relationship. Goldman tried to convince the Circuit to ignore that relationship and hold that Reno was not a customer because Goldman's services – marketing bonds and conducting auctions – did not "relate directly to investment or brokerage services." *Id.* at 739. But the Circuit rejected that argument because Goldman served as both underwriter and broker-dealer for Reno over a two-year period and was paid by Reno for these services. *Id.* The Circuit held that a customer is one who purchases services from a FINRA member and that under this definition Reno "easily qualifies" as Goldman's customer. *Id.*

AXA argues that *Reno* requires that the customer purchase services directly from the FINRA member. But *Reno* did not purport to set down a rule to govern all factual situations – if it did so, it would be dicta, but it did not even try to do so. Instead, *Reno* set down a rule to govern its very simple fact scenario. *Reno* had no reason to discuss – and indeed did not discuss – the issue faced here where the party seeking arbitration against the FINRA member dealt exclusively with the FINRA member's associated person. The Court must turn elsewhere for guidance.

While not binding on this Court, the Second Circuit has interpreted Rule 12200 in the following manner: "[T]he rule requires a FINRA member to arbitrate disputes with its 'customers' *or the 'customers' of its 'associated persons.'*" *Citigroup Global Markets Inc. v. Abbar*, 761 F.3d 268, 274 (2d Cir.2014) (emphasis added). Applied to this case,

*Abbar's* interpretation would mean that the Lees could compel AXA to arbitrate because the Lees were the customers of Roberts, an associated person of AXA.

This interpretation did not spring fully formed from *Abbar.* Rather, it was the progeny of an interpretation made years earlier in *John Hancock Life Ins. Co. v. Wilson,* 254 F.3d 48 (2d Cir.2001). In that case the alleged victims of fraud sought arbitration against a FINRA member despite having no dealings whatsoever with the FINRA member – the victims had dealt exclusively with a representative of the FINRA member. In other words, the court in *John Hancock* faced the same facts and wrestled with the same issue presented here: May the victims compel the FINRA member to arbitrate when their dealings have been exclusively with the FINRA member's associate person? Yes, said the court in *John Hancock,* and it based this holding on the language of the Rule:

> In the district court's view, "the term customer plainly refers to either the member's or the associated person's customer." We agree with the district court. There is nothing in the language of Rule 10301, or any other provision of the NASD Code, that compels us (or even suggests that we ought) to adopt John Hancock's narrow definition of the term "customer." In fact, the NASD Code defines "customer" broadly, excluding only "a broker or dealer." Rule 0120(g). The Investors are neither.[1]

*Id.* at 59. Certainly FINRA was aware that this decision would be considered authoritative and followed widely because it came from the Second Circuit, a court known for its expertise in this area. If FINRA felt that *John Hancock* was contrary to the intent of Rule

---

[1] The NASD Rule is the predecessor to the FINRA Rule and is identical in wording.

**Memorandum Decision – page 6**

12200, one would expect FINRA to alter the Rule to avoid *John Hancock*. But the Rule has remained unchanged in the 15 years since *John Hancock* was decided.

AXA argues that this holding was overruled by *Abbar*. But *Abbar* actually confirmed this holding in *John Hancock* when *Abbar* held that "the rule requires a FINRA member to arbitrate disputes with its 'customers' *or the 'customers' of its 'associated persons.'*" *Abbar*, 761 F.3d at 274 (emphasis added). Agreeing with this analysis are two district courts in the Second Circuit decided after *Abbar*. *See Triad Advisors v. Siev,* 60 F.Supp.3d 395, 396 (E.D.N.Y 2014) (holding that *Abbar* "reaffirmed" *John Hancock*); *Sagepoint v Small,* 2015 WL 2354330 at * 4 (E.D.N.Y May 15, 2015) (recognizing the similarity of the holdings in *Abbar* and *John Hancock* on this issue).

It is true that *Abbar* reached a different result than *John Hancock*. But that is because the victim in *Abbar* not only purchased nothing from the FINRA member he sought to force into arbitration, he also purchased nothing from that FINRA member's representatives. *Id.* at 275 (finding that the representatives actually worked for a separate entity and received no fees or payments from the victim). It would be as if Roberts was working for a firm separate from AXA, and the Lees made all their payments for his services to that separate entity. Those are not the facts of this case and so the result in *Abbar* has no carry-over value to this case.

The Court finds *John Hancock* persuasive. In the absence of Ninth Circuit authority on point, the Court will adopt the reasoning of *John Hancock* and hold that the Lees have the right to seek arbitration against AXA under FINRA Rule 12200. Consequently, the

Court will grant the Lees' motion for summary judgment and deny AXA's cross-motion.

The Court will issue a separate Judgment as required by Rule 58(a).

DATED: January 27, 2016

B. Lynn Winmill
Chief Judge
United States District Court